J-S68025-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| ROBERT DEAN ROBINSON | |
| Appellant | No. 78 WDA 2016 |

Appeal from the Judgment of Sentence November 19, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0006516-2015

BEFORE:  SHOGAN, J., SOLANO, J., and STRASSBURGER, J.[*]

DISSENTING MEMORANDUM BY SOLANO, J.:      **FILED FEBRUARY 9, 2017**

I respectfully dissent, because, based on my review of the record, and consonant with **Commonwealth v. Kennedy**, 789 A.2d 731, 732 (Pa. Super. 2001), I find merit to Appellant's sufficiency claim.  I would vacate Appellant's judgment of sentence and reverse his conviction.

In seeking to renew his firearms license, Appellant completed an Application for a Pennsylvania License to Carry Firearms, Form SP 4-127 (10-2012), which asks the applicant on the first page to answer a series of questions in its Paragraph 30, which reads in relevant part:

---

[*] Retired Senior Judge assigned to the Superior Court.

| APPLICANTS ARE DETERMINED TO BE ELIGIBLE FOR A LICENSE TO CARRY FIREARMS BASED UPON CRITERIA SET FORTH WITHIN THE PENNSYLVANIA UNIFORM FIREARMS ACT (18 PA.C.S. CHAPTER 61) § 6105, DEALING WITH INDIVIDUALS NOT TO POSSESS FIREARMS AND § 6109, DEALING WITH THE ISSUANCE OF A LICENSE TO CARRY FIREARMS. | | |
|---|---|---|
| 30. DO YOU MEET ANY OF THE FOLLOWING PROHIBITING CRITERIA UNDER 18 PA.C.S. § 6109(e)(1)? CHECK YES OR NO IN THE BOX BY EACH QUESTION: | | |
| B. HAVE YOU EVER BEEN CONVICTED OF AN OFFENSE UNDER THE ACT OF APRIL 14, 1972 (P.L. 233, NO. 64) KNOWN AS THE CONTROLLED SUBSTANCE, DRUG, DEVICE AND COSMETIC ACT (CSDDCA)? (AS PROVIDED IN 18 PA.C.S. § 6109(e)(1)(II), ANY PENNSYLVANIA DRUG CONVICTION UNDER THE CSDDCA IS PROHIBITING FOR A LICENSE TO CARRY.) | ☐ YES | ☐ NO |
| C. HAVE YOU EVER BEEN CONVICTED OF A CRIME ENUMERATED IN § 6105(b), OR DO ANY OF THE CONDITIONS UNDER § 6105(c) APPLY TO YOU? **(READ INFORMATION ON BACK PRIOR TO ANSWERING)** | ☐ YES | ☐ NO |
| E. HAVE YOU EVER BEEN INVOLUNTARILY COMMITTED TO A HOSPITAL/HEALTH CARE FACILITY FOR A MENTAL HEALTH CONDITION OR OTHER TREATMENT, OR ADJUDICATED INCOMPETENT/ INCAPACITATED? | ☐ YES | ☐ NO |
| G. ARE YOU NOW CHARGED WITH, OR HAVE YOU EVER BEEN CONVICTED OF A CRIME PUNISHABLE BY IMPRISONMENT FOR A TERM EXCEEDING ONE YEAR? THIS IS THE MAXIMUM SENTENCE YOU COULD HAVE RECEIVED, NOT THE ACTUAL SENTENCE YOU DID RECEIVE. (IT DOES NOT INCLUDE FEDERAL OR STATE OFFENSES PERTAINING TO ANTITRUST, UNFAIR TRADE PRACTICES, RESTRAINTS OF TRADE, OR REGULATION OF BUSINESS; OR STATE OFFENSES CLASSIFIED AS MISDEMEANORS AND PUNISHABLE BY A TERM OF IMPRISONMENT NOT EXCEEDING TWO YEARS.) | ☐ YES | ☐ NO |

Commonwealth Exhibit 4 (emphasis in original; Questions 30.A., D., F., H., I., and J. omitted), at 1. The information on the back of the form lists categories of persons prohibiting from carrying a firearm under Sections

6105(a) and (c) of the Uniform Firearms Act. *See id.* at 2. The list under Section 6105(c), which is referenced in Question 30.C. of the form, states:

> . . . § 6105(c) also prohibits the following persons from possessing, using, controlling, transferring, manufacturing, or obtaining a license to possess, use, control, transfer, or manufacture a firearm in the Commonwealth of Pennsylvania.
>
> **ARE YOU A PERSON WHO:**
>
> 1. . . . ; or
>
> 2. has been convicted of an offense under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, or any equivalent Federal statute or equivalent statute of any other state, that may be punishable by a term of imprisonment exceeding two years; or . . . .

*Id.* (emphasis in original). Appellant checked "NO" to each of the questions in Paragraph 30.

The trial court convicted Appellant of violating 18 Pa.C.S. § 4904(b), which provides:

> **Statements "under penalty".** — A person commits a misdemeanor of the third degree if he makes a written false statement which *he does not believe to be true*, on or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable.

18 Pa.C.S. § 4904(b) (emphasis added). To convict Appellant under this provision, the Commonwealth had to prove beyond a reasonable doubt that when Appellant checked "NO" in answering the questions in Paragraph 30 of the form, his answers were false and Appellant did not believe his answers to be true. The record does not contain such proof.

- 3 -

At trial, the Commonwealth presented its case entirely by stipulations. The parties' stipulated to Appellant's certified convictions in 2007 and 2011 for possession of a controlled substance under Section 13(a)(16) of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780-113(a)(16), and, on that basis, the court held that Appellant was untruthful in answering Question 30.B. regarding prior drug convictions. The parties also stipulated that Appellant was involuntarily committed to a mental health facility in 2011, and on that basis the court held that Appellant was untruthful in answering Question 30.E. The Commonwealth presented no direct evidence of Appellant's intent or belief in answering the questions. The only two witnesses at the hearing were the two witnesses called by Appellant — his father, Robert Dean Robinson, Sr.; and Appellant himself — and they testified that there was no intent to lie.

With respect to the questions on the form about prior drug convictions, Appellant testified that he "was a little confused. I must have misread the question. I assumed that I had to have been convicted and served over a year in prison." N.T., 11/19/15, at 20. Appellant said he "wish[ed he] had properly asked an attorney about it," although he testified that when he completed the application form, he believed he was being honest. *Id.* at 21.

Of course, the trial court was not required to believe Appellant's denials. But it **was** required to base its conviction on evidence that Appellant believed he was lying when he completed the form. The only evidence supporting conviction was that Appellant knew he had been

convicted of possessing drugs in 2011 and nevertheless had answered "NO" to Question 30.B. on the form. But ***Commonwealth v. Kennedy***, which reversed a conviction on facts very similar to those here, establishes that knowledge of a past drug conviction is not in itself sufficient to prove an intentional violation of Section 4904(b).

Appellant had several reasons for answering "NO" to Question 30.B. in good faith. First, his application sought a ***renewal*** of his license. Appellant testified that he was charged with his first drug offense in 2007, but was able to obtain a concealed carry permit two years after that. N.T., 11/19/15, at 18. Appellant was seeking to renew that permit when he filed the application at issue in 2014. He admitted that when he was completing the application, "[t]here were a few things I was a little iffy about," and he added, with hindsight, "I should have looked into it further since all of this happened." He concluded: "I figured I was renewing it, so I figured it was alright." ***Id.*** at 17.

Second, Appellant's 2007 conviction resulted in probation without a verdict, a result that the Majority characterizes as "similar to the ARD program." The ARD — "accelerated rehabilitative disposition" — program provides for the dismissal of charges and expungement of a criminal record once the program is successfully completed. ***See generally*** Pa. R. Crim. P. 319,320. Appellant testified that he "was under the impression from my attorney — he told me since I got ARD for it that it wouldn't be on my criminal record." N.T., 11/19/15, at 17-18. He therefore reasonably

- 5 -

believed that it did not count as a conviction. Appellant added, "They must have changed the rules since that or something." ***Id.***

Third, Trial Exhibits 2 and 3 include Appellant's criminal informations, pleas, and sentences in 2007 and 2011 for possession of a controlled substance. Both of those exhibits state that the maximum penalty Appellant could have received for the offenses was "1 yr." Appellant's 2011 conviction resulted in a sentence of just one year of probation. Thus, if the prior convictions that would disqualify Appellant from carrying a firearm required potential punishment of one year or more, Appellant's prior convictions would not be disqualifying.

It is here that Appellant's confusion about the form is relevant. Question 30.B. asked whether Appellant had ever been convicted of an offense under the Controlled Substance, Drug, Device and Cosmetic Act and said that under Section 6109(e) of the Uniform Firearms Act, "any Pennsylvania drug conviction under [that statute] is prohibiting for a license to carry." But then Question 30.C. asked whether Appellant had ever been convicted of a crime listed in Section 6105(c) of the Uniform Act and instructed him, in bold type, to "read [the] information on back prior to answering." The information on the back of the form told him that a disqualifying offense under that provision was "an offense under the . . . Controlled Substance, Drug, Device and Cosmetic Act . . . that may be punishable by a term of imprisonment ***exceeding two years*** [emphasis added]." Then, Question 30.G. asked whether he had been "convicted of a

- 6 -

crime punishable by imprisonment for a term **exceeding one year** [emphasis added]." Appellant interpreted all of this to mean that if he was not imprisoned for more than a year — which he was not — his prior convictions were not disqualifying.

In **Kennedy**, we reversed a conviction for unsworn falsification to authorities because the defendant's negative answer to the question whether he had "ever been convicted of an offense under . . . The Controlled Substance, Drug, Device and Cosmetic Act?" even though he had previously been convicted of possessing drugs was "the product of 'confusion'" by the defendant about the wording of the questions on the form. 789 A.2d at 733-734. We explained:

> It is Appellant's position that his response to Question 31 was influenced by the content of Question 29, which directed him to the back of the application before answering whether he had been convicted of any of the thirty-five offenses under Section 6105(b) or Section 6105(c), which prohibits licensure when, *inter alia,* a person has been convicted of an offense under The Drug Act "punishable by a term of imprisonment exceeding two years."

> Appellant interpreted subsection (c)(2) of Section 6105 to be applicable to Questions 29 **and** *31.* In other words, because Appellant had not been convicted of anything that carried a term of over two years, he answered no to Question 31. . . . Appellant was aware of the consequences of answering the questions falsely and he acknowledged not acting with intent to mislead the public servant reviewing his application. Rather, he asserts he answered the questions and signed the form at the end thereof (pursuant to Section 4904's unsworn falsification to authorities) to the best of his knowledge.

> Appellant testified to making a "mistake" by interpreting Question 31 to prohibit possession of a license to carry a firearm to persons convicted of violating The Drug Act, provided the

imposition of imprisonment exceeded two years. His actions were the product of "confusion" over when to reference the back of the application in answering the questions.

We read **Form SP 4-127 (2-98)** to contain internal inconsistencies, which leaves the reader in a quandary when to examine the back of the document in advance of answering questions on the face of the application. For example, three of the first four questions (Nos. 29, 30 and 32) direct the applicant to the information on the back of the form prior to supplying an answer. On each of the three occasions, paragraph (2) of Section 6105(c) lists the prohibited offense of violating The Drug Act as conduct sufficient to deny licensure, **provided the drug offense is punishable by a term of imprisonment in excess of two years**.

Herein, it is uncontroverted that the only evidence reflective of the state of mind of the accused was generated by Appellant, who stated unequivocally his actions were the product of confusion and not a knowing intent to falsify information. Thus, evidence of Appellant (in answering Question 31) "mak[ing] any written false statement . . . not believ[ing it] to be true" is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. **Commonwealth v. Libonati**, 346 Pa. 504, 31 A.2d 95, 95 (1943). Accordingly, we hold that the jury ignored the unrefuted account that Appellant's act of filling out **Form SP 4-127 (2-98)** was the product of a mistake and not the knowing and intentional act of one seeking to deceive. **Cf. Mano v. Madden**, 738 A.2d 493 (Pa. Super. 1999) *en banc* (impermissible for a jury to ignore uncontroverted testimony of the events allowed for award of new trial).

**Id.** at 734–735 (emphasis in original).

The Majority concludes that in this case, "Question 30(B) does not implicate the 'internal inconsistencies' found in **Kennedy** because that question on the form comes ahead of the only question on the page (Question 30(C)) that asks the applicant to look at the back of the form for additional information." Majority at 9. But the inconsistencies here are

- 8 -

similar to those in **Kennedy**.[1]  There were multiple questions on the form, and Appellant was required to read and answer all of them.  To do so, he had to read the back of the form, as Question 30.C. instructed.  And a review of the back of the form showed that a drug crime had to be subject to "imprisonment exceeding two years."  This requirement would seem devoid of sense if, under Question 30.B., a conviction of **any** drug crime was disqualifying, even if the sentence did not involve such a term of imprisonment.  Confusion here, as in **Kennedy**, was understandable.

Notably, the trial court did not expressly address Appellant's credibility.  Rather, the trial court stated that the certified 2007 and 2011 drug convictions to which the parties stipulated were sufficient to support Appellant's conviction.  **See** Trial Court Opinion, 2/23/16, at 5.  Although proof of the convictions shows that Appellant may have not been eligible to renew his permit, it does not prove Appellant's **state of mind** when he completed the application or, as required by the statute, that he acted with a belief that he was lying.  I therefore conclude that the evidence of his prior convictions was insufficient to convict him under Section 4904(b).

---

[1] Although this Court does not have the benefit of reviewing the form completed by the appellant in **Kennedy**, the form completed by Appellant in this case was also a "Form SP 4-127."  The form at issue in **Kennedy** had a date of "(2-98)," while Appellant's Form SP 4-127 appears to have been revised and shows a date of "(10-2012)."

I reach the same conclusion regarding Appellant's incorrect answer to Question 30.E. relating to involuntary commitment to a health care facility. Appellant's father, Mr. Robinson, testified that he assisted Appellant when he was filling out the application. N.T., 11/19/15, at 7. He stated that Appellant "had an incident up in Meadville and that was why he was asking me to help him fill out the form." *Id.* at 8. Appellant's counsel asked Mr. Robinson "specifically" whether Appellant "was ever committed or if he was voluntarily signed in." *Id.* at 7. The following exchange occurred:

> MR. ROBINSON: [Appellant] was doing drugs and alcohol, and we had to call the police to take him up to the hospital because he was acting a little nutty.
>
> DEFENSE COUNSEL: How long did he stay in the hospital?
>
> MR. ROBINSON: I think he was in there for three days. I had to go and get him.
>
> DEFENSE COUNSEL: Did you get him in Meadville?
>
> MR. ROBINSON: Well, actually he was up in Erie. He was at Millcreek Hospital in Erie. . . . I was with him whenever they ran him up there, and I was with him when the nurses and doctors were with him. I was under the impression that when I left that he had signed himself in and he wasn't committed, but something must have happened after I left. He was pretty out of it.
>
> DEFENSE COUNSEL: But based on your conversation about that, how did you tell him to answer the question on the form?
>
> MR. ROBINSON: I read it, and I said, "Robert, you signed yourself in when we [were] up in Erie."

*Id.* at 8-9.

Appellant testified as follows:

I asked my father if I was 302'd,[2] and he told me, "No." I was under the impression that I wasn't 302'd and that I checked myself into the hospital. . . . It was a bad part of my life. . . . I didn't have a completely accurate recollection, but I figured if anyone knew if I was 302'd, then it would be the person that 302'd me. . . . He told me to the best of his knowledge that I ended up checking myself into the hospital. . . .

N.T., 11/19/15, at 17-18. When questioned by his attorney as to whether he believed he was "being honest" when he "filled out that form," Appellant responded, "Yes, sir, I did." *Id.* at 21.

In discounting Appellant's testimony regarding his mental health commitment, the trial court stated that it was "impossible to understand how either [Appellant] or his father could be confused as to whether or not he was involuntarily committed." Trial Court Opinion, 2/23/16, at 5. However, in the next sentence, the trial court conceded that Appellant "had no independent recollection of how he was committed other than the fact that he was committed." *Id.* at 5-6. The trial court then stated that it "is difficult to believe that the Pennsylvania State Police is providing cab service for individuals who are seeking to be voluntarily committed." *Id.* at 6. This statement disregards the undisputed testimony of Appellant's father, who expressed his belief that Appellant decided to voluntarily commit himself *after* they arrived at the hospital. Police respond to various types of situations and do their best when they try to resolve crises. Here, Appellant

_____

[2] Appellant used the term "302'd" to refer to an involuntary commitment under Section 302 of the Mental Health Procedures Act, 50 P.S. § 7302.

needed to be committed to a mental health facility, so the police transported him to a hospital. That was an appropriate action, and it has no bearing on whether Appellant agreed voluntarily to commit himself once he arrived at the hospital.

Viewing the evidence in a light most favorable to the Commonwealth as the verdict winner, I conclude that the evidence was insufficient to support a finding beyond a reasonable doubt that Appellant believed his written false statements to be untrue, as required by 18 Pa.C.S. § 4904(b), because the evidence was so "weak and inconclusive that, as a matter of law, no probability" of Appellant's intent to deceive can be drawn from the combined circumstances. *Kennedy*, 789 A.2d at 734. Appellant may have been negligent in answering — or failing to research how best to answer — the questions on his application to renew his firearm license, but there is insufficient evidence that he made the false statements with a belief that they were untrue.

Because I would vacate Appellant's judgment of sentence and reverse his conviction, I respectfully dissent.